Steven L. Taggart, ISB No. 8511
**MAYNES TAGGART PLLC**
P. O. Box 3005
Idaho Falls, ID 83403
Telephone: (208) 552-6442
Facsimile: (208) 524-6095
Email: staggart@maynestaggart.com

*Counsel for Debtor/Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| In Re: | Case No. 20-40163-JMM |
|---|---|
| ROBERT ALLEN AUTO GROUP, INC. | Chapter 11 |
| Debtor/Debtor-in-Possession. | |

## CHAPTER 11 PLAN OF LIQUIDATION

ROBERT ALLEN AUTO GROUP, INC., the Debtor, proposes the following *Plan of Liquidation* ("Plan"). This Plan treats all of the assets of Robert Allen Auto Group, Inc., including the assets of Robert Allen Nissan of Helena, Inc. and Allen Family Holdings, L.L.C. (merged into the Debtor prepetition) and proposes a resolution of the outstanding claims against it. Reference is made to the Disclosure Statement, distributed with this Plan, which contains a discussion of the Debtor's assets, its business troubles, liquidation alternatives, a summary and analysis of this Plan, and certain related matters. Debtor urges all holders of claims to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. It is important that you read this Plan carefully, and in conjunction with the Debtor's *Disclosure Statement* to evaluate the impact such Plan will have upon your claim or interest.

### EXECUTIVE SUMMARY

The plan calls for the controlled and timely liquidation of all assets over the next months through a series of sales, auctions, and liquidations. More specifically, the Plan will call for:

- Sale of the following through the Plan:
  - Debtor's commercial real estate, consisting of 28,961 square feet of commercial buildings on nearly 3 acres and other assets.

- There are minimal additional assets which shall also be liquidated consisting of accounts receivable, furniture, equipment and machinery.
- Once all such assets have been sold, Debtor's business will cease to exist

The proceeds from the sale, auction, or surrender of assets will be applied as provided herein, but generally to lienholders in order of lien priority in specific collateral and then to administrative, priority and general unsecured creditors.

## ARTICLE I.
## DEFINITIONS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

### 1.1 Scope of Definitions; Rules of Construction.

Except as expressly provided or unless the context otherwise requires, capitalized terms used but not otherwise defined in this Plan shall have the meanings ascribed to them in this Article I. Any term used in this Plan that is not defined herein, but is defined in the Disclosure Statement, the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it therein. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### 1.2 Definitions.

1.2.1   "Administrative Claim" means a claim for the cost or expense of administration of this Chapter 11 case, including any actual and necessary expense of preserving or liquidating the estate, any actual and necessary expense of operating the business of the Debtor, and all allowances approved by the Court in accordance with the Bankruptcy Code.

1.2.2   "Administrative Claims Bar Date" shall have the meaning given it in Article 14.1.1 of this Plan.

1.2.3   "Allowed Claim" means a claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and non-contingent amount of which is scheduled, other than a claim that is scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by this Plan, the Bankruptcy Code or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied by a Final Order, or (d) is reflected in a schedule of Allowed Claims, if any, filed from time to time with the Bankruptcy Court by the Debtor, or (e) that is expressly allowed

in a liquidated amount in this Plan. An Allowed Claim (a) includes a Disputed Claim to the extent such Disputed Claim becomes allowed after the Effective Date; and (b) shall be net of any valid setoff exercised with respect to such claim under the provisions of the Bankruptcy Code and applicable law.  Unless otherwise specified herein, in section 506(b) of the Bankruptcy Code, or in any order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of distributions under this Plan, include for prepetition claims, interest on such claim or claims accruing from or after the Petition Date.

       1.2.4   "Avoidance Actions" means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims existing or arising under Chapter 5 of the Bankruptcy Code, including but not limited to state law remedies available pursuant to Section 544 of the Bankruptcy Code, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertible directly or derivatively, in law, equity or otherwise.

       1.2.5   "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§101-1532, as now in effect or hereafter amended, and as applicable to Debtor's Chapter 11 case.

       1.2.6   "Bankruptcy Court" means the United States Bankruptcy Court for the District of Idaho or any other court with jurisdiction over Debtor's Chapter 11 case.

       1.2.7   "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Debtor's Chapter 11 case or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended, and as applicable to Debtor's Chapter 11 case.

       1.2.8   "Business Day" means any day on which commercial banks are open for business in Idaho Falls, Idaho, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

       1.2.9   "Case Interest Rate" means the federal judgment rate described in 28 U.S.C. § 1961 in effect on the Petition Date.

       1.2.10  "Causes of Action" means, individually or collectively, any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims held by Debtor as of the Effective Date, including but not limited to Avoidance Actions, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertible directly or derivatively, in law, equity or otherwise.

1.2.11 "Class" means one of the classes of claims listed in Article II of this Plan.

1.2.12 "Confirmation" means entry by the Bankruptcy Court of the Confirmation Order.

1.2.13 "Confirmation Date" means the date of entry of the Confirmation Order on the docket maintained by the Clerk of the Bankruptcy Court with respect to this Chapter 11 case.

1.2.14 "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code, to consider confirmation of this Plan under section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.2.15 "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

1.2.16 "Debtor" means Robert Allen Auto Group, Inc., including in its capacity as Debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

1.2.18 "Disclosure Statement" means the disclosure statement that relates to this Plan, as approved by the Bankruptcy Court as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

1.2.19 "Disputed Claim" means any claim against or Interest in Debtor or any portion thereof that is not an Allowed Claim or a disallowed claim, as the case may be.

1.2.20 "Distribution Date" means the date, occurring within one hundred twenty (120) days of the Effective Date or as soon as is practicable thereafter, on which the Debtor first makes distributions under this Plan.

1.2.21 "Effective Date" means the Second Business Day on which all conditions set forth in Article 9.1 of this Plan have been either satisfied or waived as provided in Article 9.2 of this Plan.

1.2.22 "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

1.2.23  "General Unsecured Claim" means a pre-petition unsecured claim against Debtor that is not entitled to priority under section 507 of the Bankruptcy Code, including any claim for money borrowed or guaranteed, rejection of executory contracts, unsecured deficiency claims, and claims for indemnification, if any.

1.2.24  "Gross Lease" means a flat fee lease whereby the tenant is not responsible for payment or reimbursement of any costs associated with taxes, insurance, utilities or maintenance of any item more than $500.  The costs associated with taxes, insurance, utilities, and maintenance requirements of more than $500 shall be the responsibility of the landlord.

1.2.25  "Interest" means the legal, equitable, contractual and other rights of any holder of a stock interest, membership interest, partnership interest or other equity interest in a corporation, limited liability company, limited partnership, general partnership or other entity, whether or not transferable, and any option, warrant or right, contractual or otherwise, to purchase, sell, subscribe for or otherwise acquire or receive any such interest.

1.2.26  "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time.

1.2.27  "Liquidation Completion Date" means the date at which all real property and personal property under the Plan is liquidated, but prior to the completion of the Plan.  This should not be confused with the Plan Termination Date.

1.2.28  "Net Proceeds" are proceeds from a sale net of any tax liabilities arising from such sale (such as but not limited to capital gains), and any costs of the sale (such as but not limited to an auctioneer fee, transportation costs, brokerage/realtor fee, closing costs, filing fee, recording fee, etc.), any trustee fees associated with such sale, and any carveouts as provided herein.

1.2.29  "Other Priority Claim" means a claim entitled to priority under section 507(a) of the Bankruptcy Code other than a priority tax claim or an administrative claim.

1.2.30  "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, trustee, United States Trustee, estate, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof or other entity.

1.2.31  "Petition Date" means October 9, 2018, the date on which Debtor filed its petition for reorganization relief commencing the Chapter 11 case.

1.2.32  "Plan" means this Liquidation Plan proposed by Debtor, together with all exhibits hereto, as it may be further amended, modified or supplemented from time

to time in accordance with section 1127 of the Bankruptcy Code, including Plan Supplements, if any.

      1.2.33  "Plan Supplement" means the compilation of documents or forms of documents specified in this Plan, including any exhibits to this Plan not included herewith, that may be filed with the Bankruptcy Court on or before the date that is fourteen (14) days prior to the Confirmation Hearing.

      1.2.34  "Plan Termination Date" means August 31, 2021.  This should not be confused with the Liquidation Completion Date.

      1.2.35  "Post-Effective Date Assets" means all property of the kind defined in Section 541, as limited by all subsections of Section 541, of the Bankruptcy Code.

      1.2.36  "Pro Rata" means, at any time, the proportion that the face amount of an Allowed Claim in a particular Class bears to the aggregate face amount of all claims (including Disputed Claims, but excluding disallowed claims) in that Class, unless this Plan provides otherwise.

      1.2.37  "Professional Fee Claims" shall have the meaning given it in Article 14.1.2 of this Plan.

      1.2.38  "Proponent" means Debtor.

      1.2.39  "Secured Claim" means a claim, other than a Setoff Claim, that is secured by a lien that is valid, perfected and enforceable, and not avoidable, on property in which Debtor has an interest, or the proceeds of the sale of such property, to the extent of the value, as of the Petition Date, of such interest or lien as determined by a Final Order of the Bankruptcy Court under section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the holder of such claim.

      1.2.40  "Setoff Claim" means a claim of holder that has a valid right of setoff with respect to such claim, which right is enforceable under section 553 of the Bankruptcy Code as by a Final Order or as otherwise agreed writing by the Debtor, to the extent of the amount subject to such right of setoff.

      1.2.41  "Voting Deadline" means the date and time, as fixed by an order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject this Plan must be received.

    **1.3**     **Rules of Interpretation.**

In this Plan (a) any reference to a contract, instrument, release, indenture or other agreement or document as being in a particular form or on particular terms and conditions means the agreement or document substantially in that form or on those terms and conditions; (b) any reference to an existing document or exhibit means that document or

exhibit as it may have been amended, modified or supplemented; (c) unless otherwise specified, all references to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (e) captions and headings to Articles and Sections are for convenience and ease of reference only and are not intended to be a part of or to impact interpretation of this Plan; and (f) the rules of construction in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

### 1.4     Computation of Time.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTEREST

### 2.1     Introduction.

All claims, except administrative claims and priority tax claims, are placed in the Classes set forth below in accordance with section 1123(a)(1) of the Bankruptcy Code. Administrative claims and priority tax claims, as described below, have not been classified and are not entitled to vote on this Plan. A claim is placed in a particular Class only to the extent that the claim falls within the description of that Class and is classified in other Classes to the extent that any portion of the claim or Interest falls within the description of such other Classes. A claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such claim is an Allowed Claim in that Class and such claim has not been paid, released, waived or otherwise settled prior to the Effective Date.

All allowed claims and allowed interests have been placed in the following classes:

### 2.2.    Unclassified Claims (not entitled to vote on the Plan).

2.2.1   Class AC1 – Administrative Claims.

2.2.2   Class PC1 – Priority Tax Claims.

### 2.3     Unimpaired Class of Claims (deemed to have accepted the Plan).

2.3.1   Class PC2 – Other Priority Claims.

Class PC2 consists of all Other Priority Claims against the Debtor. There are four (4) Other Priority Claims consisting of prepetition wage claims to employees Dani McDonald, Kenneth Edick, Susan K. Edick, and Tyler Allen.

**2.4    Impaired Classes of Claims (entitled to vote on the Plan).**

All impaired classes are set forth in Section 3.3 below.

## ARTICLE III.
## TREATMENT OF CLAIMS AND INTERESTS

**3.1    Unclassified Claims.**

3.1.1    Class AC1 – Administrative Claims.

Each holder of an Allowed Claim that is an administrative claim shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such allowed administrative claim, cash equal to the unpaid portion of such allowed administrative claim on or as soon as reasonably practicable after the liquidation of all of Debtor's real estate and subject to the requirements of Article 14.1.2 of the Plan for Professional Fee Claims and substantial contribution claims; provided however, that obligations incurred by the Debtor after the Confirmation Date, including Professional Fee Claims, shall not be subject to applications to the Bankruptcy Court and may be paid by the Debtor in the ordinary course of business and without further Bankruptcy Court approval.

3.1.2    Class PC1 – Priority Tax Claims

Each holder of an Allowed Claim that is a priority tax claim shall be paid in full at any time on or after the Distribution Date without premium or penalty; and provided further, that no holder of an allowed priority tax claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising after the Petition Date with respect to or in connection with such allowed priority tax claim.

**3.2    Unimpaired Class of Claims.**

3.2.1    Class PC2 – Other Priority Claims.

On, or as soon as soon as reasonably practicable after the liquidation of all of Debtor's real estate, as applicable, (a) cash in an amount equal to the unpaid portion of such allowed Other Priority Claim or (b) such other treatment as to which the Debtor and such holder shall have agreed upon in writing.

**3.3    Impaired Class of Claims.**

**3.3.1    Class SC1 – Bannock County Treasurer**

This class consists of the Secured Claim of the Bannock County Treasurer for

$29,036.13 in property taxes related to the property at 345 N 5th Avenue, Pocatello, ID 83204. The remaining balance of this claim shall be paid in full from the proceeds of the sale of the property consisting of the following, not already sold:

> 300 North 5th Ave., Pocatello – Buildings and property totaling 28,961 square feet on a 2.96 acre site.

> Parcel 1 - RUPOC175400 Block 270, Lots 11-15 & South 6' of Lot 16
> Parcel 2 - RUPOC184300 Block 293, Lots 1 and 2
> Parcel 3 - RUPOC183500 Block 293, Lots 2 and 3
> Parcel 4 - RUPOC183600 Block 293, Lots 4 and 5
> Parcel 5 - RUPOC183700 Block 293 Lots 6 thru 10
> Parcel 6 - RPPOC184300 Block 294, Lots 1 thru 7
> Parcel 7 - RPPOC183800 Block 293, Lots 11 and 12
> Parcel 8 – RPPOC 174700 Block 269, Lots 16 and South 1/2 of 17
> Parcel 9 - RPPOC175200 Block 270, Lots 7 and 8
> Parcel 10 - RPPOC175302 Block 270, West 70' of Lots 9 and 10
> Parcel 11 - RUPOC173800 Block 270, Lots 1 and 2

(hereafter "Real Property").

The Bannock County Treasurer shall  retain the lien securing the claim until the allowed secured claim has been paid as provided herein.  Members of this class shall accept the foregoing claim treatment in full satisfaction of the claim(s) and shall receive no further distributions under the Plan.

Any event of default that may have existed pre-petition with respect to this claim shall be deemed cured and any notices which may have been recorded pre or post-petition with respect to this claim shall be deemed null and void and of no further force or effect, and the holder of the Class SC1 Claim shall execute any documents or instruments necessary to reflect the same, including the execution and recordation of any pertinent releases.

The automatic stay and/or plan injunction on the real property which secures Class SC1's claim will continue in effect until the Plan Termination Date or at such time as the real property is sold, whichever occurs first.  Should the real property fail to sell before this date, the stay will automatically expire, and Class SC1 may pursue state law remedies, including judicial foreclosure.

In the event that the Debtor defaults in its obligation to pay each payment due and payable under the Plan to the Class SC1, Class SC1 may send a written notice of the default to the Debtor at the Debtor's place of business or such other location as may be agreed, and Debtor's counsel.  In that event, the Debtor will have 30 days from the date the notice is sent to cure the default.  If during that period the default is not cured, the Class SC1 Claimant may file the Statement of Default with the Bankruptcy Court, the filing of which will operate as relief from the automatic stay and the Bannock County Treasurer shall be

entitled to record any pertinent notices and accelerate the entire unpaid indebtedness and/or exercise such other remedies as provided under any guarantees, or under applicable Idaho law.  The Debtor shall be entitled to cure and reinstate any such default under applicable Idaho law.

Nothing in the Plan shall enhance, diminish, or otherwise increase or decrease the rights of the holder of Class SC1 to seek recovery on its claim as against any party other than the Liquidating Debtor.

This Class is impaired under the Plan.

### 3.3.2    Class SC2 – Nissan Motor Acceptance Corporation

This class consists of the Secured Claim of Nissan Motor Acceptance Corporation, (hereafter "NMAC"), which is partially secured by the Real Property identified in 3.3.1 above.  The underlying bases for Class SC2 are as follows:

- **Real Estate Loan –** On or about December 16, 2016, Allen Family Holdings, LLC ("AFH") executed a Promissory Note payable to NMAC.  The Promissory Note represented a real estate loan made by NMAC to Allen Family Holdings, LLC for the purpose of acquiring Debtor's dealership premises located at 300 North 5th Avenue, Pocatello, Idaho and for making improvements to the same. Allen Family Holdings, LLC also executed a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing in favor of NMAC dated December 16, 2016 creating a lien on the Dealership Premises. The Deed of Trust not only secured the Promissory Note but also the payment and performance of all indebtedness and other obligations between NMAC and the Debtor, including the balances owing under the Montana Judgment and Idaho Judgment listed below. The amount outstanding under the Real Estate Loan, as of May 7, 2020, was $2,744,313.81 comprised of a principal balance of $2,640,522.92 and interest of $103,790.89.

- **Montana Judgment –** On November 7, 2019, a judgment of $2,535,253.77 against Robert Allen Auto Group, Inc., and Robert T. Allen was awarded in the U.S. District Court, District of Montana in the case *Nissan Motor Acceptance Corporation vs. Robert Allen Auto Group, Inc., and Robert T. Allen,* CV 19-160-H-CCL.  The amount outstanding on that judgment is $2,326,905.30.

- **Idaho Judgment –** On December 19, 2019, a judgment of $1,979,214.61 against Robert Allen Auto Group, Inc., and Robert T. Allen was awarded in the U.S. District Court, District of Idaho in the case *Nissan Motor Acceptance Corporation vs. Robert Allen Auto Group, Inc., and Robert T. Allen,* Case No. 4:19-cv-00067-BLW.  The amount outstanding on that judgment is $1,274,617.75.

- **Cross-Guaranty, Cross-Collateral, and Cross- Default Agreement –** on June 21, 2018, Robert Allen Nissan of Helena, Inc., the Debtor, Allen Family Holdings, LLC and Robert T. Allen executed a Fourth Amended and Restated

Cross-Guaranty, Cross-Collateral and Cross-Default Agreement ("Cross Agreement"). Under the terms of the Cross Agreement, Robert Allen Nissan of Helena, Inc., the Debtor, Allen Family Holdings, LLC and Robert T. Allen all guaranteed the various loan obligations between NMAC and Robert Allen Nissan of Helena, Inc., the Debtor, Allen Family Holdings, LLC. In addition, any collateral securing any specific loan obligation owing to NMAC constituted collateral for all other loan obligations owing to NMAC by Robert Allen Nissan of Helena, Inc., the Debtor, Allen Family Holdings, LLC.

As of May 7, 2020, the total outstanding indebtedness owing to NMAC was estimated at $6,345,836.86. However, on October 5, 2020, this Court approved[1] a stipulation between the Debtor and NMAC in which the Debtor and NMAC agreed that of the total amount of its claim, only the amount secured by the Real Estate Loan would be treated as secured.[2] Therefore, of the $6,345,836.86 total amount estimated amount Debtor owes to NMAC, $2,744,313.81 shall be treated as secured and as a Class SC2 claimant, while the remaining $3,601,523.05 shall be treated as unsecured and shall become a part of Class UC1.

Class SC2's claim of $2,744,313.81 will be satisfied from the Net Proceeds of the sale of the Real Property, as identified in 3.3.1 above, after Class SC1's claim is fully satisfied.

Class SC2 shall retain the lien securing the claim until the allowed secured claims have been paid as provided herein. Members of this class shall accept the foregoing claim treatment in full satisfaction of the claim(s) and shall receive no further distributions under the Plan.

The automatic stay and/or plan injunction on the Real Property will continue in effect until March 15, 2021, or at such time as the Real Property is sold, whichever occurs first. Should the Real Property fail to sell before this date, the stay will automatically expire, and Class SC2 may pursue state law remedies, including judicial foreclosure.

In the event that the Debtor defaults in its obligation to pay each payment due and payable under the Plan to the Class SC2, Class SC2 may send a written notice of the default to the Debtor at the Debtor's place of business or such other location as may be agreed, and Debtor's counsel. In that event, the Debtor will have 30 days from the date the notice is sent to cure the default. If during that period the default is not cured, the Class SC2 Claimant may file the Statement of Default with the Bankruptcy Court, the filing of which will operate as relief from the automatic stay and Class SC2 shall be entitled to record any pertinent notices and accelerate the entire unpaid indebtedness and/or exercise such other remedies as provided under any guarantees, or under applicable Idaho law. The Debtor shall be entitled to cure and reinstate any such default under applicable Idaho law.

---

[1] See *Order on Motion to Approve Stipulation Resolving Motion for Relief from Stay and Treatment of Nissan Motor Acceptance Corporation (Dkt. 97).* Doc. 102.
[2] See *Stipulation Resolving Motion for Relief from Stay and Treatment of Claim of Nissan Motor Acceptance Corporation,* Doc. 92.

Nothing in the Plan shall enhance, diminish, or otherwise increase or decrease the rights of the holder of Class SC2 to seek recovery on its claim as against any party other than the Liquidating Debtor.

This Class is impaired under the Plan.

### 3.3.3    Class SC3 – U.S. Bank Equipment Finance

Class SC3 consists of that Secured Claim filed as Proof of Claim 11 by U.S. Bank, N.A. d/b/a/ U.S. Bank Equipment Finance, aka Bank of the West, (hereafter "U.S. Bank"). In that Proof of Claim, U.S. Bank asserts a claim of $62,985.82, of which they assert $30,000 is secured by a lien on a "car wash" that is perfected by a UCC filing. Debtor has been unable to locate such UCC statement and one has not been provided with the Proof of Claim. Therefore, Debtor disputes this claim and elects to treat it in its entirety as an unsecured claim, and shall become a part of the UC1 Class below.

### 3.3.4    Class UC1 – General Unsecured Claims

Class UC1 consists of all General Unsecured Claims that exist against the Debtor, including, without limitation, monies borrowed, rejection of executory contracts and unexpired leases, unsecured deficiency claims if timely filed, and claims for indemnification, if any, but claims for indemnification or contribution are only included to the extent not included in any other class. Members of this class shall be paid parri passu, on or before the Plan Termination Date, all remaining funds in Debtor's DIP Account, net administrative costs and any remaining tax liabilities.

Class UC1 is impaired under the Plan.

### 3.3.5    **Class EQ1 – Equity Interest Holders**

Equity Interest Holders (Pre- and post-petition). Class EQ1 consists of all Equity Interests in the Debtor. An effect of confirmation shall vest equity ownership in the Liquidating Debtor in the same persons and at the same percentages that existed pre-petition. Members of this Class EQ1 shall receive no equity distributions on account of their equity interests until creditors holding Allowed Claims have been paid in full as provided supra.

### 3.4    **Allowed Claims.**

Notwithstanding any provision herein to the contrary, the Debtor shall make distributions only to holders of Allowed Claims. No holder of a Disputed Claim shall receive any distribution on account thereof until and to the extent that its Disputed Claim becomes an Allowed Claim. The presence of a Disputed Claim in any Class shall not be a cause to delay distribution to Allowed Claims in that Class. Any holder of a Disputed Claim that becomes an Allowed Claim after the Distribution Date shall not receive its

distribution, except as otherwise expressly provided in this Plan, and except as set forth in Article VIII of this Plan.

**3.5    Accrual of Post-Petition Interest.**

In accordance with section 502(b)(2) of the Bankruptcy Code, the amount of all claims against the Debtor shall be calculated as of the Petition Date. Except as otherwise provided elsewhere in this Plan or in an order of the Bankruptcy Court, no holder of an Allowed Claim shall be entitled to the accrual of post-petition interest or the payment by Debtor of post-petition interest on account of such Allowed Claim for any purpose. Notwithstanding the foregoing, holders of Allowed Claims that are secured claims shall be entitled to post-petition interest to the extent provided for in Bankruptcy Code section 506(b).

**ARTICLE IV.**
**TREATMENT OF EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES**

**4.1    Assumed Contracts and Leases.**

Except as otherwise provided in this Plan, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, as of the Effective Date, Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease is otherwise accepted.

**4.2    Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

If the rejection by Debtor, pursuant to this Plan or otherwise, of an executory contract or unexpired lease results in a claim for damages, THEN SUCH CLAIM SHALL BE FOREVER BARRED AND SHALL NOT BE ENFORCEABLE AGAINST THE BANKRUPTCY ESTATE AND THE LIQUIDATING DEBTOR, UNLESS A PROOF OF CLAIM IS FILED WITH THE CLERK OF THE BANKRUPTCY COURT AND SERVED ON COUNSEL FOR DEBTOR WITHIN THE EARLIER OF THIRTY (30) DAYS AFTER SERVICE OF THE EARLIER OF (I) NOTICE ENTRY OF THE CONFIRMATION ORDER OR (II) OTHER NOTICE THAT THE EXECUTORY CONTRACT OR UNEXPIRED LEASE HAS BEEN REJECTED.

**ARTICLE V.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1    Cash Disbursements.**

5.1.1    *Reserved*.

**5.2**     **Distributions from Liquidation and Winding Down**

5.2.1   Plan Term

From the Confirmation Date to Plan Termination Date and winding down, the Debtor shall dedicate such portion of the distributions from liquidations as is necessary to implement the Plan.

5.2.2   *Reserved.*

**5.3**     ***Reserved.***

**5.4**     **Post-Effective Date Assets.**

All Post-Effective Date Assets shall be retained by the Debtor except as set forth herein.

**5.5**     **Exemption from Certain Transfer Taxes.**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer from Debtor to any other Person or entity pursuant to a sale or transfer authorized by this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**5.6**     **Transaction on Business Days.**

If the date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**5.7**     **Implementation.**

Pursuant to the Confirmation Order and upon Confirmation of this Plan, the Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan, in accordance with its terms. On or before the Effective Date, Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan and the other agreements referred to herein. Debtor shall execute such documents and take such other actions as necessary to effectuate the

transactions provided for in this Plan, without the need for any additional approvals, lien releases, authorizations or consents.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF THE PLAN

**6.1    Classes Entitled to Vote.**

Each impaired Class of claims under this Plan is entitled to vote to accept or reject this Plan.  By operation of law, each unimpaired Class of claims, if any, is deemed to have accepted this Plan and, therefore, is not entitled to vote.

**6.2    Acceptance by Impaired Classes.**

An impaired Class of claims shall have accepted this Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept this Plan, in each case not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code.

**6.3    Elimination of Classes.**

Any Class that does not contain, as of the date of the commencement of the Confirmation Hearing, any Allowed Claims or Interests or any claims temporarily allowed for voting purposes under Fed. R. Bankr. P. 3018 shall be deemed to have been deleted from this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**6.4    Cramdown.**

If, and to the extent, necessary to confirm this Plan notwithstanding the deemed rejection of this Plan by any Class, the Debtor shall request confirmation of this Plan, as it relates to such Classes and as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify this Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1    Time of Distribution for Claims.**

The above referenced distributions shall be made within the forty-five (45) days of the payment due days designated herein unless provided otherwise in the Plan.

### 7.2     Allocation of Consideration.

The aggregate consideration to be distributed to the holders of Allowed Claims in each Class of claims under this Plan shall be treated first, as satisfying the stated principal amount of each holder's Allowed Claim and second, to the extent of any remaining consideration, as satisfying accrued but unpaid interest, if any.

### 7.3     Means of Cash Payment.

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtor, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtor. Cash payments to foreign creditors, if any, may be made, at the option, and in the sole discretion, of the Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to this Plan in the form of checks issued by the Debtor shall be null and void if not cashed within sixty (60) days of the date of the issuance thereof.

### 7.4     Fractional Dollars; *De Minimis* Distributions.

Any other provision of this Plan notwithstanding, payments of fractions of dollars shall not be made. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. The Debtor shall not make any payment of less than $100.00 with respect to any claim unless a request therefore is made in writing to the Debtor.

### 7.5     Delivery of Distributions; Undeliverable or Unclaimed Distributions; No Requirement to Surrender Certificates.

Distributions to holders of Allowed Claims shall be made by the Debtor (i) at the holder's last known address, (ii) at the address in any written notice of address change delivered to the Debtor, or (iii) at the address shown in a duly filed Notice of Transfer under Bankruptcy Rule 3001.  If any holder's distribution is returned as undeliverable, is unclaimed or such holder fails to cash a check within ninety (90) days of its issuance, such distribution shall be deposited with the Bankruptcy Court as unclaimed funds.

### 7.6     Withholding and Reporting Requirements.

In connection with this Plan and all distributions hereunder, the Debtor shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements.

**7.7    Set Offs.**

The Debtor may, but shall not be required to, set off against any claim the payments or other distributions to be made pursuant to this Plan in respect of such claim, claims, or Causes of Action of any nature whatsoever that Debtor may have against the claim's holder; provided, however, that neither the failure to do so nor the allowance of any claim hereunder shall constitute a waiver or release by Debtor of a Cause of Action that Debtor may have against such holder.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

**8.1    Objections to Claims; Disputed Claims**

No later than as soon as practicable after the Effective Date, the Debtor shall file objections, if any, to proofs of claim with the Bankruptcy Court. Notwithstanding any provision of this Plan to the contrary, the Debtor shall have the right and standing to process and bring on for final hearing claims objections filed during the term of the Plan.

**8.2    No Distribution Pending Allowance.**

Notwithstanding any other provision hereof, if any portion of a claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such claim unless and until such Disputed Claim becomes an Allowed Claim.  Pending the Court determination on disallowance, the Debtor shall reserve any portion of plan distributions otherwise attributable to such disputed claim if it were allowed.   Within thirty (30) days after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, such formerly Disputed Claim will receive the portion of reserved plan payments held by the Debtor attributable to such claim.

**8.3    Estimation of Claims; Distribution Reserve.**

**8.3.1    Estimation of Claims**.

Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether Debtor has previously objected to such claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated claim, that estimated amount will constitute either the allowed amount of such claim or a maximum limitation on such claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such claim, Debtor may elect to pursue any supplemental

proceedings to object to any ultimate payment on such claim. All of the aforementioned claims and objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 8.4 Distribution After Allowance/Disallowance.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, all future distributions shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan. Within thirty (30) days after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, the Debtor shall provide to the holder of such claim the future distributions to which such holder is entitled under this Plan. To the extent that any Disputed Claim is ultimately disallowed the monies reserved by the Debtor pending final determination as to the allowance/disallowance of such disallowed claim shall be distributed as a part of the next annual disbursement required under this Plan.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION AND
## CONSUMMATION OF THE PLAN

### 9.1 Conditions to Effective Date.

The following are conditions precedent to the occurrence of the Effective Date that must be (i) satisfied or (ii) waived in accordance with Article 9.2 below:

9.1.1   The Confirmation Date shall have occurred and the Confirmation Order confirming this Plan, as the same may have been modified, supplemented or amended, shall have been entered by the Bankruptcy Court.

9.1.2   The Confirmation Order shall have become a Final Order.

### 9.2 Waiver of Conditions.

The condition set forth in Article 9.1 above may be waived in whole or in part by the Debtor, without any notice to parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor). The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE X.
## MODIFICATIONS AND AMENDMENTS

The Debtor may alter, amend or modify this Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date and may include any such amended exhibits in this Plan or the Plan Supplement. After the Confirmation Date and prior to substantial consummation of this Plan, as defined in section 1101(2) of the Bankruptcy Code, the Debtor, may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan so long as such proceedings do not materially adversely affect the treatment of holders of claims or Interests under this Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, Debtor's Chapter 11 case and this Plan to the fullest extent permitted by law, including, by way of illustration and not limitation, jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority, nature, validity or amount of any claim or Interest, including, but not limited to, the resolution of any request for payment of any administrative claim, the resolution of any objections to the allowance or priority of claims, and the resolution of any adversary proceeding or contested matter to subordinate any claim or Interest under section 510 of the Bankruptcy Code or otherwise;

(b)     Hear and determine all applications for compensation and reimbursement of expenses of professionals under this Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(c)     Hear and determine all applications for compensation and reimbursement of expenses by the Debtor's professionals as described by this Plan.

(d)     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any claims arising therefrom;

(e)     Effectuate performance of and payments under the provisions of this Plan;

(f)      Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, Debtor's Chapter 11 case, including, but not limited to, any Avoidance Actions;

(g)      Hear and determine any and all motions to subordinate claims or Interests at any time and on any basis permitted by applicable bankruptcy or non-bankruptcy law;

(h)      Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(i)      Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(j)      Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(k)      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation or enforcement of this Plan or the Confirmation Order;

(l)      Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

(m)      Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(n)      Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Chapter 11 case;

(o)      Recover all assets of Debtor and property of Debtor's estate, wherever located;

(p)      Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(q)      Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(r)      Enter a final decree closing Debtor's Chapter 11 case.

## ARTICLE XII.
## EFFECTS OF CONFIRMATION

### 12.2    Binding Effect.

This Plan shall be binding on and inure to the benefit of Debtor, all current and former holders of claims against and Interests in Debtor and their respective successors and assigns, and all other parties-in-interest in Debtor's Chapter 11 case.

### 12.3    Authorization of Further Action.

The entry of the Confirmation Order shall constitute a direction to and authorization for the Debtor to take or cause to be taken any action necessary or appropriate to consummate the transactions contemplated by this Plan and any related documents or agreements prior to and through the Effective Date, and all such actions taken or caused to be taken in accordance with the provisions of this Plan shall be deemed to have been authorized and approved by the Bankruptcy Code without the need for any additional authorizations, approvals or consents.

### 12.4    Exculpation.

Debtor, and the agents, employees, attorneys, and accountants of the Debtor, each acting solely in their capacities as such, shall not be liable to any holder of a claim against the Debtor for any act or omission in connection with or arising out of the administration of this Chapter 11 Case, including, without limitation, the negotiation, preparation and pursuit of Confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan except in each case for liability based on willful misconduct or gross negligence as finally determined by the Bankruptcy Court. The Debtor and its agents, attorneys, and accountants each acting solely in their capacities, shall be entitled to rely, in every respect, upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### 12.5    Injunction.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, ALL HOLDERS OF CLAIMS AGAINST OR INTERESTS IN DEBTOR ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ANY SUCH CLAIM AGAINST OR INTEREST IN DEBTOR OR AGAINST THE PROPERTY DEALT WITH BY THIS PLAN, OR DEBTOR'S ESTATE; (2) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE PROPERTY DEALT WITH BY THIS PLAN OR

DEBTOR'S ESTATE; AND (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OR ANY KIND AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTOR'S ESTATE OR PROPERTY DEALT WITH BY THIS PLAN EXCEPT AS OTHERWISE PROVIDED HEREIN. FURTHER ALL CREDITORS FILING CLAIMS IN THIS PROCEEDING SHALL, ON THE EFFECTIVE DATE OF THE PLAN, BE REQUIRED TO DISMISS DEBTOR FROM ANY ACTION FILED IN ANY COURT.

INJUNCTION DOES NOT APPLY TO ANY CLAIMS AGAINST NON-DEBTOR 3RD PARTIES.

**12.6    Releases.**

12.6.1  Nothing in this Plan shall release any Person (other than Debtor and the Debtor's estate as described in paragraph 12.4) from any claims, obligations, rights, Causes of Action, demands, suits, proceedings or liabilities based on any act or omission arising out of such Person's fraud, breach of fiduciary duty, malpractice, gross negligence or willful misconduct. The Debtor shall have the right to pursue such rights of action, including the rights under section 502(d) of the Bankruptcy Code as a defensive measure, including for purposes of setoff against distributions, if any, due to a holder of a claim or Interest pursuant to this Plan.

12.6.2  To the fullest extent permitted by applicable law, neither the Debtor, nor any of its attorneys, shall be liable or incur any liability to any holder of a claim against the Debtor for any act or omission in connection with, relating to, or arising out of, the Chapter 11 case, the solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the consummation of this Plan or the administration of this Plan except in each case for their fraud, breach of fiduciary duty, gross negligence or willful misconduct, and in all respects the Debtor shall be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under this Plan.

**12.7    Ambiguity and Integration.**

12.7.1  Ambiguities.

Ambiguities and uncertainties in this Agreement, if any, shall not be interpreted against either party, irrespective of which party may be deemed to have caused the ambiguity or uncertainty to exist.

12.7.2  Counterparts; Integration; Effectiveness.

This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Plan, taken together with the Disclosure Statement, constitute the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or

written, relating to the subject matter hereof. This Plan shall become effective on the Effective Date as provided herein. Delivery of an executed counterpart of a signature page of this Agreement by telecopy or other electronic imaging means shall be effective as delivery of a manually executed counterpart of this Agreement.

## ARTICLE XIII.
## COMPROMISES AND SETTLEMENTS

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), and except as provided by Article 5.1 and Article 5.2, the Debtor may compromise and settle various claims against Claimants, creditors or other Persons, in accordance with the provisions of this Plan. Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle claims against it and claims that it may have against other Persons.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

### 14.1    Bar Dates for Certain Claims.

14.1.1  Administrative Claims.

The Confirmation Order shall establish the "Administrative Claims Bar Date" for filing administrative claims (other than (i) claims previously allowed by the Bankruptcy Court, (ii) the claims of professionals employed in the cases ("Professional Fee Claims") and (iii) other claims for reimbursement), which date shall be thirty (30) days after the Liquidation Completion Date. Holders of asserted administrative claims, except for Professional Fee Claims or United States Trustee fees, whose claims were not paid prior to the Confirmation Date, shall submit requests for payment of administrative expenses on or before such Administrative Claims Bar Date or forever be barred from doing so. The notice of entry of the Confirmation Order to be delivered pursuant to Fed. R. Bankr. P. 3020(c) and 2002(f) shall set forth such date and constitute notice of the Administrative Claims Bar Date. The Debtor shall have sixty (60) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such administrative claims before a hearing for determination of allowance of such administrative claims.

14.1.2  Professional Fee Claims; Substantial Contribution.

All final requests for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to Debtor prior to the Confirmation Date (including requests under section 503(b)(4) of the Bankruptcy Code by any professional or other entity for making a substantial contribution in Debtor's Chapter 11 case) shall be filed and served on Debtor and his counsel, and the Office of the United States Trustee, as well as those parties filing notices of appearance in these cases or otherwise requesting notice of such application, no later than thirty (30) days

after the Liquidation Completion Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such professionals or other entities for compensation or reimbursement of expenses shall be filed and served on Debtor and its counsel, the Office of the United States Trustee, and the requesting professional or other entity within the time allotted by the Bankruptcy Rules.

### 14.2   Payment of Statutory Fees.

All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.

### 14.3   Severability of Plan Provisions.

If, prior to entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.4   Successors and Assigns.

The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

### 14.5   Term of Injunctions or Stays.

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect during the term of the Plan. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms, notwithstanding 11 USC §362(c).

**14.6    Revocation, Withdrawal or Non-Consummation.**

Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other Plans of Liquidation. If Debtor revokes or withdraws this Plan or if Confirmation does not occur, or if the Confirmation Order is vacated, then (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any claim or Interest or Class of claims or Interests), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (iii) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (a) constitute a waiver or release of any claims by or against, or any Interests in, Debtor or any other Person; (b) prejudice in any manner the admission of any sort by Debtor or any other Person.

**14.7    Plan Supplement.**

Any and all exhibits, lists or schedules referred to herein but not filed with this Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court at least fourteen days prior to the date of the commencement of the Confirmation Hearing. Thereafter, any Person may examine the Plan Supplement in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of claims or Interests may obtain a copy of the Plan Supplement on written request to Debtor in accordance with Article 14.11 below and subject to the terms of the Protective Order.

**14.10    Prepayment.**

The Debtor shall have the right to prepay any or all of the claims hereinabove set forth, without penalty.  No notice of prepayment shall be required.  In the event Debtor prepays any secured claim, or any portion thereof, the remaining balance of such secured claim shall be re-amortized for the term specific to such secured claim and the annual payment amount adjusted accordingly.

**14.11    Notices to Debtor.**

Any notice, request or demand required or permitted to be made or provided to or on Debtor under this Plan shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested; (b) hand delivery; (c) overnight delivery service; (d) first class mail; or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    Debtor:                     Robert Allen Auto Group, Inc.
                                Attn: Robert Allen
                                9075 Stoney Creek Rd.
                                Pocatello ID 83204

Attorney for Debtor:          Steven L. Taggart, Esq.
                             MAYNES TAGGART PLLC
                             P.O. Box 3005
                             Idaho Falls, ID  83403-3005

Or at such other address that Debtor may designate in writing in a Notice of Change of Address filed with the Court or served upon creditor(s).

**14.12   Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the state of Idaho shall govern the construction and implementation of this Plan and any agreements, documents, and instruments reinstated or executed in connection with this Plan.

DATED:          December 31, 2020

                ROBERT ALLEN AUTO GROUP, INC.

By:     */s/ Robert Allen*_____
Its:    President

                MAYNES TAGGART PLLC

        */s/ Steven L. Taggart*
        Steven L. Taggart, Esq.