Steven L. Taggart, ISB No. 8511
**MAYNES TAGGART PLLC**
P. O. Box 3005
Idaho Falls, ID 83403
Telephone: (208) 552-6442
Facsimile: (208) 524-6095
Email: staggart@maynestaggart.com

*Counsel for Debtor/Debtor-in-Possession*

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 20-40163-JMM |
| ROBERT ALLEN AUTO GROUP, INC. | Chapter 11 |
| Debtor/Debtor-in-Possession. | |

---

## DISCLOSURE STATEMENT

---

On March 2, 2020, ROBERT ALLEN AUTO GROUP, INC. ("Debtor"), the surviving entity under that certain Plan of Merger dated February 25, 2020 with ROBERT ALLEN NISSAN OF HELENA, INC. and ALLEN FAMILY HOLDINGS, L.L.C., (the non-surviving entities), filed its voluntary petition for relief pursuant to Chapter 11, Subchapter V of the Bankruptcy Code with the United States Bankruptcy Court for the District of Idaho. See Doc. 1. Debtor amended its petition for relief from a Chapter 11, Subchapter V to a Chapter 11 on May 22, 2020. See Doc. 63. Pursuant to Section 1125 of the Bankruptcy Code, the Debtor has obtained an order of the Court approving this Disclosure Statement ("Disclosure Statement") for submission to the holders of claims against it to allow such claim holders to vote for or against Debtor's Plan of Reorganization.

### INTRODUCTION

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S PROPOSED PLAN OF LIQUIDATION.

### PLEASE READ THIS DOCUMENT WITH CARE.

The Debtor is providing this Disclosure Statement to all of its known creditors pursuant to Section 1125 of the Bankruptcy Code in order to permit such creditors to make an informed judgment in exercising their right to vote on the Plan of Liquidation. Section

1125 of the Bankruptcy Code requires that this Disclosure Statement be submitted to holders of claims against, and interests in, the Debtor, and that this Disclosure Statement contains sufficient information about the Debtor to enable creditors and other interested parties to make an informed decision regarding the Plan of Liquidation. The Disclosure Statement is required to be approved by the Court. The Debtor has complied with the requirements of Section 1125 of the Bankruptcy Code and the Disclosure Statement has been approved by the Court with a determination that it contains adequate information.

THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

This Disclosure Statement is being furnished to all known creditors and claimants to inform them about the Plan and their rights with respect thereto. The only representations that are authorized by the Debtor concerning its finances and business operations, the value of Debtor's assets, its Liquidation prospects, or other matters are as contained in this Disclosure Statement. The financial information contained in this Disclosure Statement has not been subjected to an audit by an independent Certified Public Account; however, it has been prepared by the Debtor's business accountants and is consistent with historical financial information. For that reason, the Debtor is not able to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracy; however, effort has been made to ensure that all such information is fairly represented.

In determining the acceptance of the Plan, votes will only be counted if submitted by the claimant whose claim is duly scheduled by the proponent as undisputed, non-contingent, and liquidated, or who, prior to the hearing on confirmation has filed with the Court a proof of claim which has not been disallowed or suspended prior to the computation of the vote on the plan. A class that is unimpaired is deemed to have accepted the plan if solicitation of acceptance is not required under 11 USC § 1126(f). The ballot received from you does not constitute a Proof of Claim. If you are in any way uncertain whether or not your claim has been correctly scheduled, you should check the Debtor's schedules which are on file in the office of the Clerk of the United States Bankruptcy Court, U.S. Courthouse, Pocatello, Idaho. Due to the volume of business of the Clerk of the Bankruptcy Court, it is believed that this information will not be given by telephone.

Pursuant to Bankruptcy Code 11 USC §1129(b), a plan may be confirmed even if it is not accepted by one or all of the impaired classes, provided the Bankruptcy Court deems the plan does not discriminate unfairly and the plan is *fair and equitable* to such class or classes.

## EXECUTIVE SUMMARY OF THE PLAN

The plan calls for the controlled and timely liquidation of all assets over the next months through a series of sales, auctions, and liquidations.  More specifically, the Plan will call for:

- Sale of the following through the Plan:
  - Debtor's commercial real estate, consisting of 28,961 square feet of commercial buildings on nearly 3 acres
- Once all assets have been sold, Debtor's business will cease to exist

The proceeds from the sale, auction, or surrender of assets will be applied as provided herein, but generally to lienholders in order of lien priority in specific collateral and then to administrative, priority and general unsecured creditors.

## APPENDICES

Accompanying this Disclosure Statement are copies of the following documents:

| | |
|---|---|
| APPENDIX A: | The Court's *Order Approving Disclosure Statement* pursuant to 11 USC §1125; affixing the time for the filing of acceptances or rejections of the Plan of Liquidation and for a hearing on confirmation of the Plan of Liquidation. |
| APPENDIX B: | The Plan of Liquidation. |
| APPENDIX C: | The ballot form for acceptance or rejection of the Plan of Liquidation. |
| APPENDIX D: | Debtor's list of secured and unsecured claims, including any disputed claims. |
| APPENDIX E: | Monthly Operating Reports have been filed with the Court as required by the Chapter 11 Bankruptcy Code and the U.S. Trustee Guidelines and will not be attached here to avoid unnecessary duplication of paperwork. |
| APPENDIX F: | Liquidation Analysis |

To avoid unnecessary duplication of paperwork Debtor has not attached the monthly reports filed with the Court as required by the Chapter 11 Bankruptcy Code and the U.S. Trustee Regulations.  They are available on the Bankruptcy Court's website or will be produced if a creditor requests a copy thereof from Debtor's counsel.  Debtor believes these show that it has used its best efforts to comply with payment of all expenses during the pendency of this proceeding and Court Orders issued to date.

## DEFINITIONS

Unless the context otherwise requires, the following terms, when used in this Disclosure Statement shall have the same meanings set forth in Article 1.2 of the Plan:

1.2.1    "Administrative Claim" means a claim for the cost or expense of administration of this Chapter 11 case, including any actual and necessary expense of preserving or liquidating the estate, any actual and necessary expense of operating the business of the Debtor, and all allowances approved by the Court in accordance with the Bankruptcy Code.

1.2.2    "Administrative Claims Bar Date" shall have the meaning given it in Article 14.1.1 of this Plan.

1.2.3    "Allowed Claim" means a claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and non-contingent amount of which is scheduled, other than a claim that is scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by this Plan, the Bankruptcy Code or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied by a Final Order, or (d) is reflected in a schedule of Allowed Claims, if any, filed from time to time with the Bankruptcy Court by the Debtor, or (e) that is expressly allowed in a liquidated amount in this Plan. An Allowed Claim (a) includes a Disputed Claim to the extent such Disputed Claim becomes allowed after the Effective Date; and (b) shall be net of any valid setoff exercised with respect to such claim under the provisions of the Bankruptcy Code and applicable law.  Unless otherwise specified herein, in section 506(b) of the Bankruptcy Code, or in any order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of distributions under this Plan, include for prepetition claims, interest on such claim or claims accruing from or after the Petition Date.

1.2.4    "Avoidance Actions" means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims existing or arising under Chapter 5 of the Bankruptcy Code, including but not limited to state law remedies available pursuant to Section 544 of the Bankruptcy Code, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertible directly or derivatively, in law, equity or otherwise.

1.2.5    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§101-1532, as now in effect or hereafter amended, and as applicable to Debtor's Chapter 11 case.

1.2.6   "Bankruptcy Court" means the United States Bankruptcy Court for the District of Idaho or any other court with jurisdiction over Debtor's Chapter 11 case.

1.2.7   "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Debtor's Chapter 11 case or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended, and as applicable to Debtor's Chapter 11 case.

1.2.8   "Business Day" means any day on which commercial banks are open for business in Idaho Falls, Idaho, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

1.2.9   "Case Interest Rate" means the federal judgment rate described in 28 U.S.C. § 1961 in effect on the Petition Date.

1.2.10   "Causes of Action" means, individually or collectively, any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims held by Debtor as of the Effective Date, including but not limited to Avoidance Actions, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertible directly or derivatively, in law, equity or otherwise.

1.2.11   "Class" means one of the classes of claims listed in Article II of this Plan.

1.2.12   "Confirmation" means entry by the Bankruptcy Court of the Confirmation Order.

1.2.13   "Confirmation Date" means the date of entry of the Confirmation Order on the docket maintained by the Clerk of the Bankruptcy Court with respect to this Chapter 11 case.

1.2.14   "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code, to consider confirmation of this Plan under section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.2.15   "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

1.2.16   "Debtor" means Robert Allen Auto Group, Inc., including in its capacity as Debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

1.2.18  "Disclosure Statement" means the disclosure statement that relates to this Plan, as approved by the Bankruptcy Court as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

1.2.19  "Disputed Claim" means any claim against or Interest in Debtor or any portion thereof that is not an Allowed Claim or a disallowed claim, as the case may be.

1.2.20  "Distribution Date" means the date, occurring within one hundred twenty (120) days of the Effective Date or as soon as is practicable thereafter, on which the Debtor first makes distributions under this Plan.

1.2.21  "Effective Date" means the Second Business Day on which all conditions set forth in Article 9.1 of this Plan have been either satisfied or waived as provided in Article 9.2 of this Plan.

1.2.22  "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

1.2.23  "General Unsecured Claim" means a pre-petition unsecured claim against Debtor that is not entitled to priority under section 507 of the Bankruptcy Code, including any claim for money borrowed or guaranteed, rejection of executory contracts, unsecured deficiency claims, and claims for indemnification, if any.

1.2.24  "Gross Lease" means a flat fee lease whereby the tenant is not responsible for payment or reimbursement of any costs associated with taxes, insurance, utilities or maintenance of any item more than $500.  The costs associated with taxes, insurance, utilities, and maintenance requirements of more than $500 shall be the responsibility of the landlord.

1.2.25  "Interest" means the legal, equitable, contractual and other rights of any holder of a stock interest, membership interest, partnership interest or other equity interest in a corporation, limited liability company, limited partnership, general partnership or other entity, whether or not transferable, and any option, warrant or right, contractual or otherwise, to purchase, sell, subscribe for or otherwise acquire or receive any such interest.

1.2.26  "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time.

1.2.27  "Liquidation Completion Date" means the date at which all real property and personal property under the Plan is liquidated, but prior to the completion of the Plan.  This should not be confused with the Plan Termination Date.

1.2.28  "Net Proceeds" are proceeds from a sale net of any tax liabilities arising from such sale (such as but not limited to capital gains), and any costs of the sale (such as but not limited to an auctioneer fee, transportation costs, brokerage/realtor fee, closing costs, filing fee, recording fee, etc.), any trustee fees associated with such sale, and any carveouts as provided herein.

1.2.29  "Other Priority Claim" means a claim entitled to priority under section 507(a) of the Bankruptcy Code other than a priority tax claim or an administrative claim.

1.2.30  "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, trustee, United States Trustee, estate, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof or other entity.

1.2.31  "Petition Date" means October 9, 2018, the date on which Debtor filed its petition for reorganization relief commencing the Chapter 11 case.

1.2.32  "Plan" means this Liquidation Plan proposed by Debtor, together with all exhibits hereto, as it may be further amended, modified or supplemented from time to time in accordance with section 1127 of the Bankruptcy Code, including Plan Supplements, if any.

1.2.33  "Plan Supplement" means the compilation of documents or forms of documents specified in this Plan, including any exhibits to this Plan not included herewith, that may be filed with the Bankruptcy Court on or before the date that is fourteen (14) days prior to the Confirmation Hearing.

1.2.34  "Plan Termination Date" means August 31, 2021 .  This should not be confused with the Liquidation Completion Date.

1.2.35  "Post-Effective Date Assets" means all property of the kind defined in Section 541, as limited by all subsections of Section 541, of the Bankruptcy Code.

1.2.36  "Pro Rata" means, at any time, the proportion that the face amount of an Allowed Claim in a particular Class bears to the aggregate face amount of all claims (including Disputed Claims, but excluding disallowed claims) in that Class, unless this Plan provides otherwise.

1.2.37  "Professional Fee Claims" shall have the meaning given it in Article 14.1.2 of this Plan.

1.2.38  "Proponent" means Debtor.

1.2.39  "Secured Claim" means a claim, other than a Setoff Claim, that is secured by a lien that is valid, perfected and enforceable, and not avoidable, on property in which Debtor has an interest, or the proceeds of the sale of such property, to the extent of the value, as of the Petition Date, of such interest or lien as determined by a Final Order of the Bankruptcy Court under section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the holder of such claim.

1.2.40  "Setoff Claim" means a claim of holder that has a valid right of setoff with respect to such claim, which right is enforceable under section 553 of the Bankruptcy Code as by a Final Order or as otherwise agreed writing by the Debtor, to the extent of the amount subject to such right of setoff.

1.2.41  "Voting Deadline" means the date and time, as fixed by an order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject this Plan must be received.

## GENERAL HISTORY OF THE DEBTOR

Debtor is a Corporation in the business of selling new and used vehicles.  Debtor is the surviving entity from that plan of merger dated February 25, 2020, and is sometimes referred to as the surviving entity.  Prior to the February 25, 2020 merger, the following entities existed:

- Robert Allen Auto Group, Inc. is a corporation duly organized and existing under the laws of the State of Idaho, with its principal place of business in Bannock County, Idaho.  Robert Allen Auto Group, Inc. was incorporated on March 27, 2003 and is identified by the Idaho Secretary of State by filing number 451628.

- Robert Allen Nissan of Helena, Inc. is a corporation duly organized and existing under the laws of the State of Idaho, with its principal place of business in Lewis and Clark County, Montana.  Robert Allen Nissan of Helena, Inc., was formed on May 23, 2008 and is identified by the Idaho Secretary of State by filing number 540619.

- Allen Family Holdings, L.L.C. is a limited liability company organized and existing under the laws of the State of Idaho, with its principal place of business in Lewis and Clark County, Montana.  Allen Family Holdings, L.L.C. was organized on April 19, 2006 and is identified by the Idaho Secretary of State by filing number 161087.

Subsequent to the merger, Robert Allen Nissan of Helena, Inc. and Allen Family Holdings, L.L.C ceased to exist.  Robert Allen Auto Group, Inc. is the sole surviving entity.

Debtor's operation consisted of selling Nissan vehicles and used vehicles of various makes and models.  The Debtor owned lots in two locations—Pocatello, Idaho and Helena, Montana.  The model of Debtor's business was that Nissan Motor Acceptance Corporation (hereafter "NMAC") would provide financing for the new vehicles, (known as "flooring" in the auto industry).  As the vehicles would sell to customers, debtor would then pay the principal and interest for each vehicle to NMAC before retaining any earnings.

Starting in 2019, the Debtor was out of trust with NMAC and entered into various forbearance agreements with NMAC.  Subsequently, the Debtor liquidated its Helena location.  However, such liquidation was insufficient to allow the Debtor to be able to pay all of its obligations.  Thus, on March 2, 2020, Debtor filed this bankruptcy petition.

## DESCRIPTION OF DEBTOR'S LIQUIDATION MODEL

Debtor currently owns approximately 3 acres in 5th Street in Pocatello, Idaho near other automobile dealerships.  On these 3 acres are approximately 28,961 square feet of commercial building space consisting of a vehicle sales store, a large vehicle service shop with service bays, and a smaller vehicle service shop with 1 service bay.

Debtor's Plan envisions that Debtor shall liquidate under the management of current leadership pursuant to the following parameters:

**<u>Sale of Real Estate</u>**

The following real property (hereafter "Property") with the address of 300 North 5th Ave., Pocatello, Idaho, not already sold through previous motion filed with the Court, are currently listed for sale:

Parcel 1 - RUPOC175400 Block 270, Lots 11-15 & South 6' of Lot 16
Parcel 2 - RUPOC184300 Block 293, Lots 1 and 2
Parcel 3 - RUPOC183500 Block 293, Lots 2 and 3
Parcel 5 - RUPOC183700 Block 293 Lots 6 thru 10
Parcel 6 - RPPOC184300 Block 294, Lots 1 thru 7
Parcel 7 - RPPOC183800 Block 293, Lots 11 and 12
Parcel 8 – RPPOC 174700 Block 269, Lots 165 and South 1/2 of 17
Parcel 9 - RPPOC175200 Block 270, Lots 7 and 8
Parcel 11 - RUPOC173800 Block 270, Lots 1 and 2

The proceeds from the property will be distributed as provided in that certain stipulation entered into with NMAC on August 18, 2020, (Doc. 92) and the Plan.

There are minimal additional assets which shall also be liquidated consisting of accounts receivable, furniture, equipment and machinery.

## PENDING LEGAL PROCEEDINGS
### (State and Federal Court Actions including Bankruptcy Proceedings)

### *Pre-petition Legal Proceedings*

As noted in Paragraph 7 of the Statement of Financial Affairs there were four (4) prepetition state court actions:

(1) *American Express Travel Related Services, Company vs. Robert Allen Nissan of Helena, Inc.,* Case No. 650878/2020, Supreme Ct. of State of New York:  This action seeks collection of the unpaid balance of approximately $59,388.18 owed to American Express.

(2) *Balboa Capital Corporation vs. Robert Allen Auto Group, Robert Allen Mitsubishi, Robert Allen Nissan of Helena, Inc.,* 30-2019-01102945-CU-CO-CJC, Superior Court of California, Orange City:  This action seeks collection of $758,321.33, with judgment entered for that same amount on January 31, 2020.

(3) *Nissan Motor Acceptance Corporation vs. Robert Allen Auto Group, Inc., and Robert T. Allen,* CV 19-160-H-CCL, US Dist. Ct., District of Montana:  this action seeks collection of $2,535,253.77, with a judgment entered for that same amount on November 7, 2019.

(4) *Nissan Motor Acceptance Corporation vs. Robert Allen Auto Group, Inc., and Robert T. Allen,* Case No. 4:19-cv-00067-BLW, US Dist. Ct., District of Idaho:  this action seeks collection of $1,979,214.61, with a judgment entered for that same amount on December 17, 2019.

The automatic bankruptcy stay has stayed these actions against the Debtor, but the actions remain pending against the non-debtor defendants in such actions.

### *Post-petition Legal Proceedings*
To date, there have not been any adversary proceedings filed in the bankruptcy case.

### *Anticipated Legal Proceedings*

The Debtor is aware of potential avoidable transfers, and/or claim objections, consisting of the following:

1. <u>NMAC</u>:  Debtor disputes NMAC's claims and asserts that it has claims against NMAC for breach of contract, intentional breach of contract, intentional

interference with economic relations and failure to mitigate damages in connection with NMAC's repossession and disposition of its vehicle collateral.[1]

The Debtor and NMAC have resolved their disputes through a stipulation previously approved by the Court.  See Doc. 92.

## COMPANY ORGANIZATION

The Debtor is an Idaho corporation that was administratively dissolved on June 4, 2020.[2]  At the present time and as noted in the List of Equity Security Holders – filed as Dkt. No. 1 on March 2, 2020, the only equity holder being Robert T. Allen.  Given the Debtor's liquidation, equity interest holders shall receive no equity distributions under the Plan unless all Allowed Claims are paid in full.  The Plan contemplates no changes in the Debtor's capital structure and equity ownership until all affairs of the corporation are wound up and liquidated.

| Member | Percentage |
|---|---|
| Robert T. Allen | 100% |

The current corporate organization and compensation, identifying managers and officers, is set out below:

| Name | Office Held | Insider Compensation (Annual) |
|---|---|---|
| Robert T. Allen | President/Director | $0 |

It is the Debtor's considered opinion that absent the assistance, expertise, and support of Mr. Allen, the Debtor's liquidation effort would be severely hampered and less profitable in returning more to all creditors.

## LEASEHOLD INTERESTS/EXECUTORY CONTRACTS

Unless specifically assumed pursuant to previous orders of the Court, the Debtor has rejected, or is rejecting in the Plan of Liquidation all prepetition executory contracts and unexpired leases.

---

[1] See *Stipulation Resolving Motion for Relief from Stay and Treatment of Claim of Nissan Motor Acceptance Corporation.*, Page 2, ¶ D. Doc. 92.

[2] Dissolution does not "change quorum or voting requirements for its board of directors or shareholders; change provisions for selection, resignation, or removal of its directors or officers or both; or change provisions for amending its bylaws;" Idaho Code § 30-29-1405.

## BASIS OF VALUATION

The basis of the evaluation of property contained in the liquidation analysis, or best interest of creditors test, was obtained from various sources, primarily the opinions of the managers.

IT SHOULD BE BORNE IN MIND THAT THE VALUES ESTABLISHED IN THIS ANALYSIS ARE ONLY THE BEST ESTIMATES OF THE DEBTOR.  These values were arrived at by assuming that the entirety of the Debtor's assets would be liquidated and it is assumed that different values might be obtained in limited or spot sales of similar property over an extended period of time.  It must be kept in mind that secured creditors will exert a major effort to reclaim their property at the earliest possible time to avoid their collateral being involved in the liquidation process.  The nature of this activity will further reduce the liquidation value of the Debtor's estate.

## LIQUIDATION ANALYSIS
### *"Best Interests of Creditors Test"*

Notwithstanding acceptance of the Plan by creditors, in order to confirm the Plan the Court must independently determine that the Plan is in the best interests of all classes of creditors.  The "best interest" test requires that the Court find that the Plan provides to each member of each impaired class of claims and interest a recovery which has a present value at least equal to the present value of a distribution which each such person would receive from the Debtor if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code instead of under Chapter 11 of the Bankruptcy Code.

To calculate what members of each impaired class of unsecured claims or interest would receive if the Debtors were liquidated, the Court must first determine the dollar amount that would be generated from the disposition or liquidation of the assets of the Debtor in excess of the amount necessary to pay allowed secured claims, plus the cash held by the Debtor, and plus recoveries on actions against third parties.  The proceeds of this liquidation will then be reduced by the costs of the liquidation.  Such a liquidation would probably take place in a Chapter 7 proceeding and such a proceeding would likely include the fees of a trustee as well as those of counsel and other professionals that might be retained by such trustee, selling expenses (including costs of advertising and auctioneer's fees or brokerage commissions), unpaid expenses incurred by the Debtor during its Liquidation proceedings under Chapter 11, and claims arising by rejection by the trustee of obligations incurred by the Debtor during the pendency of the Chapter 11 case.

The value of the distributions after liquidation, deduction of costs of liquidation, and in keeping with the analysis described above would then be compared by the Court with the present value being offered to each of the classes of unsecured claims and interests under the Plan.  The Debtor also believes that secured and unsecured claims in a liquidation would be significantly greater than under the contemplated plan.

The proponent also believes that liquidation of the Debtor's estate would be a time-consuming matter and might involve litigation between a Chapter 7 trustee and the various claimants to assets of the estate. The difficulties and cost associated with a Chapter 7 Liquidation are exacerbated by any trustee's inherent lack of "institutional" knowledge of and familiarity with the Debtor's properties. It would not be unusual that no distribution to unsecured creditors in a Chapter 7 liquidation proceeding would be forthcoming for one or more years. It is for these reasons general unsecured creditors would be prejudiced in the event of a conversion to a Chapter 7 liquidation or a dismissal.

THE DEBTOR FIRMLY BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF EACH CLASS OF CREDITORS AND THAT THE CREDITORS WILL RECEIVE BOTH A LARGER AND MORE RAPID DISTRIBUTION UNDER THIS PLAN OF LIQUIDATION THAN THEY WOULD IF THE DEBTOR'S ESTATE WERE LIQUIDATED UNDER CHAPTER 7.

To the extent under-secured creditors file timely amended proofs of claim under applicable state laws allowing for deficiency claims, if applicable, this percentage might be reduced accordingly. To the extent claims were disallowed via the claims objection process, if applicable, this percentage would be increased accordingly, even allowing for payments sooner than projected. See *Pending Legal Proceedings* elsewhere herein.

The books and records of the Proponent are largely in the possession of Proponent. As previously stated, to avoid unnecessary duplication of paperwork Debtor has not attached the monthly reports filed with the Court as required by the Chapter 11 Bankruptcy Code and the U.S. Trustee Guidelines. These have been delivered to counsel for creditors receiving electronic notice in this case. They are also available on the Bankruptcy Court's website or will be produced if a creditor requests a copy thereof from Debtor's counsel. Debtor believes these show that it has complied with payment of all expenses during the pendency of this proceeding and Court Orders issued to date.

It is the Debtor's considered opinion that the orderly liquidation and resolution of accounts as provided in the Plan represent creditors' best prospect for repayment.

**The Debtor's Liquidation Analysis is attached as Appendix "F".**

## Chapter 7 Conversion Analysis

Should the case be converted to a Chapter 7, industry and Debtor-specific knowledge that would otherwise benefit the estate would be lost. As an example, the following knowledge would be lost:
- The best method and time of marketing the real property

## Dismissal Analysis

Should the case be dismissed, each creditor would have the remedies otherwise available to it under state law.  In addition to significant time and expense that creditors would incur, there is an element of unknown risk and loss as each creditor would only be able to recoup whatever equity was available to it after other creditors had executed on their claims.

## TAX IMPLICATIONS

Although long term capital gains taxes will apply to the profits from the sale of assets held more than a year, it is Debtor's understanding from its accountant that there is sufficient loss to carry forward such that there will be no tax obligations to Debtor for the liquidation of the Real Estate.

Debtor is not familiar with any tax attributes held by its creditors and is advising creditors to consult with their own experts as to the tax implications, if any, of the Plan on those creditors.

## CONFIRMATION OF THE PLAN

Voting Procedure:  All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating and signing the "Ballot for Accepting or Rejecting Plan of Liquidation" attached to this Disclosure Statement as Appendix C. **THE BALLOT MUST BE SERVED ON THE DEBTORS' ATTORNEY BY MAILING SUCH BALLOT TO MAYNES TAGGART PLLC, P.O. BOX 3005, IDAHO FALLS, ID 83403.  IN ORDER TO BE COUNTED ALL BALLOTS MUST BE RECEIVED BY THE DEBTORS' COUNSEL PRIOR TO 5:00 O'CLOCK P.M. ON THE DATE SPECIFIED IN THE ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT.**

Persons Entitled to Vote on Plan:  Only the votes of classes of creditors whose claims or interests are impaired by the Plan of Liquidation will be counted in connection with confirmation of the Plan of Liquidation.  Generally, and subject to the specific provisions of §1124 of the Bankruptcy Code, this includes any creditor who, under the Plan, will receive less than payment in full in cash of the allowed amount of their respective claims on the effective date of the Plan.  It appears to Debtor that with the exception of Classes 1, 2, 21, 28, and 31, all other classes are impaired.  The respective classes are set forth in *Article III* of the proposed Plan.  In determining acceptance of the Plan, votes will be counted only if submitted by a creditor whose claim is scheduled by the Debtor as undisputed, non-contingent and liquidated, or who, prior to the hearing on confirmation, has filed with the Bankruptcy Court a Proof of Claim which has not been disallowed, disqualified or suspended prior to computation of the vote on the Plan.  The ballot which accompanies this Disclosure Statement does not constitute a Proof of Claim.  If you are uncertain whether your claim has been correctly scheduled, you should check the Debtor's

schedules which are on file with, and may be inspected at, the U.S. Bankruptcy Court, 801 E. Sherman Street, Pocatello, ID 83201.

Acceptances May Not be Necessary to Confirm Plan:  Under §1126 of the Bankruptcy Code an impaired class is deemed to have accepted the Plan if (1) at least 2/3 in amount and (2) more than 1/2 in number of the allowed claims or interests of class members who have voted on the Plan have voted to accept it.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Bankruptcy Court must also determine that under the Plan such class members will receive property of value, as of the effective date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the effective date of the Plan. Even if all classes of claims or interests accept the Plan, the Court may refuse to confirm the Plan.  Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and there are other provisions therein which may affect confirmation exclusive of the votes of creditors.

Confirmation of Plan Without Acceptances:  The Court may confirm a Plan even though less than all of the classes of claims or interests accepts the Plan.  The circumstances under which the Court may confirm a Plan over the objection of a class of claims or interests are set forth in §1129(b) of the Bankruptcy Code.  This section provides that the Court may confirm a Plan notwithstanding its rejection by one or more impaired classes if the Court finds that the Plan does not discriminate unfairly and is *fair and equitable* with respect to each impaired class which does not accept the Plan.  With respect to classes of secured creditors, the *fair and equitable* test requires that a secured creditor (1) retain its lien and receive cash payments having a present value equal to its allowed secured claim, and (2) receive the proceeds of the sale of its collateral, or (3) realize the indubitable equivalent of its claim to the extent validly secured.

With respect to a class of unsecured claims, the *fair and equitable* test requires that if each creditor in such class does not receive property having a present value equal to the amount of such creditors allowed claim, no junior class can receive or retain any property.  The Proponent of the Plan will rely on the features of §1129(b) in the event there is a rejection of the Plan by a class of claims or interests.  The invocation of the provision of §1129(b) is a legal matter required to be heard by the Court at the confirmation hearing or at a hearing set by the Court.

Consequences of Confirming the Plan:  Confirmation of the Plan will not discharge the Debtor from the debts provided in the Plan; confirmation makes the Plan binding upon the Debtor, creditors and other parties in interest regardless of whether they have accepted or rejected the Plan.  Confirmation of the Plan will, generally, provide for the distribution of value to the creditors as set forth in the Plan.

Hearing on Confirmation of the Plan: The Bankruptcy Court has set a hearing date to determine whether the Plan has or will be accepted and whether the other requirements for confirmation of the Plan have been satisfied.  A time for hearing for confirmation of the Plan has been established in Appendix "A" hereto and each creditor and shareholder

should make note of that Notice of Hearing and determine whether or not they want to attend. Attendance is not mandatory to establish a claim. Also, as also set forth in Appendix "A", all ballots must be timely filed with the Bankruptcy Court as outlined in Appendix "A."

Risks Associated with Confirming the Plan: The Debtor has endeavored to accurately state the projected returns based on the liquidations of Debtor's assets. To the extent that negative, unforeseen circumstances may occur, the Debtor's performance may be negatively impacted to the detriment of this estate and creditors thereof.

Retention of Jurisdiction: If the Plan is confirmed the Bankruptcy Court, it will retain jurisdiction, as more specifically set out in the Plan, to adjudicate the allowance of claims, the value of secured interests, the disposition of executory contracts or unexpired leases, the avoidance of liens or transfers, litigation concerning claims and property of the estate, rule on modifications of the Plan if any, and to issue such orders and judgments as may be necessary to implement the Plan and resolve disputes concerning the Plan.

## BANKRUPTCY SCHEDULES

This Disclosure Statement is meant to disclose all of the assets and liabilities of the Debtor. To the extent it conflicts with the bankruptcy schedules on file with the Bankruptcy Court, the disclosures contained in this Disclosure Statement and Appendices control.

DATED:        December 31, 2020

ROBERT ALLEN AUTO GROUP, INC.

By:    /s/Robert T. Allen_____
Its:    President

MAYNES TAGGART PLLC

/s/ Steven L. Taggart
Steven L. Taggart for the Firm

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 20-40163-JMM |
| ROBERT ALLEN AUTO GROUP, INC. | Chapter 11 |
| Debtor/Debtor-in-Possession. | |

### *[PROPOSED]* ORDER APPROVING DISCLOSURE STATEMENT AND FIXING TIME FOR: (1) FILING ACCEPTANCES OR REJECTIONS OF PLAN, AND (2) HEARING ON CONFIRMATION OF THE PLAN

A Disclosure Statement (the "Disclosure Statement") under Chapter 11 of the Bankruptcy Code having been filed by the Debtor on _____, referring to the proposed Chapter 11 Plan of Liquidation (the "Plan") filed by the Debtor on the same date; and

The Court finding, pursuant to 11 U.S.C. § 1125(b), that approval of the Disclosure Statement is appropriate, and finding that the Disclosure Statement contains adequate information, and other good cause appearing

IT IS ORDERED AND NOTICE IS HEREBY GIVEN THAT:

A. The Disclosure Statement filed by the Debtor dated _____ is approved pursuant to 11 U.S.C. § 1125(b);

B. _____ is fixed as the last day for filing written acceptances or rejections of the Plan referred to above;

C. The hearing on confirmation of the Plan has been set before this Court, at the U.S. Courtroom, Federal Building, 801 E. Sherman Avenue, Pocatello, Idaho on _____, at _____, or as soon thereafter as counsel can be heard;

| | |
|---|---|
| DISCLOSURE STATEMENT<br>ROBERT ALLEN AUTO GROUP, INC.<br>December 31, 2020 | ## APPENDIX "A"<br>*([PROPOSED] ORDER APPROVING<br>DISCLOSURE STATEMENT)* |

D. Within fifteen (15) days after entry of this Order, the Plan, a copy of this Order, the Disclosure Statement, and a Ballot conforming to Official Form 14 shall be mailed to creditors, equity security holders, and other parties in interest, and shall be transmitted to the United States Trustee, as provided in Federal Rules of Bankruptcy Procedure 3017(d).

E. _____ is fixed as the last day for filing and serving written objections to confirmation of the Plan pursuant to Federal Rule of Bankruptcy Procedure 3020(b)(1).

F. Any objections must be filed with the United States Bankruptcy Court at 801 E. Sherman Avenue, Pocatello, Idaho and served on Debtor's counsel, Steven L. Taggart, Esq., Maynes Taggart PLLC, P.O. Box 3005, Idaho Falls, Idaho 83403 and on the United States Trustee, 720 Park Boulevard, Suite 220, Boise, Idaho 83712.

//end of text//
Submitted by:
Steven L. Taggart
Maynes Taggart PLLC
Debtor's Counsel

| | |
|---|---|
| DISCLOSURE STATEMENT<br>ROBERT ALLEN AUTO GROUP, INC.<br>December 31, 2020 | **APPENDIX "A"**<br>*([PROPOSED] ORDER APPROVING*<br>*DISCLOSURE STATEMENT)* |

The Plan of Liquidation has been filed separately as Dkt. No. 115 due to its size, but is incorporated herein by this reference.

| DISCLOSURE STATEMENT<br>ROBERT ALLEN AUTO GROUP, INC.<br>December 31, 2020 | APPENDIX "B"<br>*(The Plan for Liquidation)* |

Steven L. Taggart, ISB No. 8511
**MAYNES TAGGART PLLC**
P. O. Box 3005
Idaho Falls, ID 83403
Telephone: (208) 552-6442
Facsimile: (208) 524-6095
Email: staggart@maynestaggart.com

*Debtor's counsel*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 20-40163-JMM |
| ROBERT ALLEN AUTO GROUP, INC. | Chapter 11 |
| Debtor. | BALLOT FOR ACCEPTING OR REJECTING PLAN |
| | [  ] Secured<br>[  ] Unsecured<br>[  ] Priority |

TO: _____
(Name of Creditor)

The plan referred to in this ballot can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interest in each class voting on the plan.  In the event the requisite acceptance are not obtained, the Court may nevertheless confirm the plan if the Court finds that the plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of Section 1129(b) of the Code.

| | |
|---|---|
| DISCLOSURE STATEMENT<br>ROBERT ALLEN AUTO GROUP, INC.<br>December 31, 2020 | **APPENDIX "C"**<br>*(Ballot for Accepting or Rejecting Plan)* |

**<u>To have your vote count you must complete and return this ballot</u>**.

[*If holder of a secured claim*] The undersigned, a creditor of the above named Debtor in the unpaid principal amount of $ _____, with a secured interest in _____ [*property of the Debtor in which security interest is claimed*],

[*If holder of a priority unsecured claim*] The undersigned, a creditor of the above named Debtor in the unpaid principal amount of $ _____, entitled to priority status pursuant to 11 U.S.C. _____ [*Bankruptcy Code section under which priority status is claimed*], or

[*If holder of general unsecured claim*] The undersigned, a creditor of the above named Debtor in the unpaid principal amount of $ _____,

**Check one box:       [   ] Accepts        [   ] Rejects**

the plan for the Liquidation of the above named Debtor.

Print or type name of business: _____

Signed: _____

(If appropriate)     By: _____

As: _____

Address: _____

_____

**THIS BALLOT MUST BE RETURNED TO THE BELOW ADDRESS, SO THAT IT IS RECEIVED ON OR BEFORE _____.**

Maynes Taggart PLLC
Attn: Steven L. Taggart
P.O. Box 3005
Idaho Falls, ID 83403

| DISCLOSURE STATEMENT ROBERT ALLEN AUTO GROUP, INC. December 31, 2020 | APPENDIX "C" *(Ballot for Accepting or Rejecting Plan)* |
|---|---|

**Robert Allen Auto Group List of Claimants**

*(as filed, before objections and/or settlements; claimants paid post-petition pursuant to Court authorization are excluded from this list)*

| Date | POC# | Sched | Class | Creditor | Secured | Priority | Unsecured | Total |
|---|---|---|---|---|---|---|---|---|
| 2020.03.06 & 2020.03.24 | 1 | E/F 2.3 | | IRS | | $ 200.00 | $ 3,622.68 | $ 3,822.68 |
| 2020.03.16 | 2 | 3.82 | | NAPA Auto Parts | | | $ 2,609.41 | $ 2,609.41 |
| 2020.03.18 | 3 | E/F 3.110 | | Nwestco (Title Wave Carwash) | | | $ 3,463.68 | $ 3,463.68 |
| 2020.03.23 | 4 | E/F 3.96 | | Rebecca Parrow | | | $ 4,127.09 | $ 4,127.09 |
| 2020.03.30 | 5 | E/F 3.11 | | Balboa Capital Corporation | | | $ 758,321.33 | $ 758,321.33 |
| 2020.03.30 | 6 | 3.37 | | Direct Automotive Distributing | | | $ 1,440.44 | $ 1,440.44 |
| 2020.03.30 | 7 | | | Direct Automotive Distributing | | | $ 48.29 | $ 48.29 |
| 2020.03.31 | 8 | E/F 2.2 | | Idaho State Tax Commission | | $ 130.72 | $ 10.00 | $ 140.72 |
| 2020.04.01 | 9 | E/F 3.99 | | Rogers Machinery Company | | | $ 1,063.87 | $ 1,063.87 |
| 2020.04.08 | 10 | E/F 3.81 | | Magrant Glass Company | | | $ 1,223.81 | $ 1,223.81 |
| 2020.04.10 | 11 | E/F 3.113 | | US Bank Equipment Finance | $ 30,000.00 | | $ 32,985.82 | $ 62,985.82 |
| 2020.04.14 | 12 | D.2.12 | | Great American Financial Services | | | $ 11,992.97 | $ 11,992.97 |
| 2020.04.22 | 13 | E/F 3.4 | | American Express | | | $ 59,388.18 | $ 59,388.18 |
| 2020.04.30 | 14 | | | Idaho Central Credit Union | | | $ 441.47 | $ 441.47 |
| 2020.04.29 | 15 | D.2.1 to D.2.11 | | Bannock County Treasurer | $ 29,036.13 | | | $ 29,036.13 |
| 2020.04.27 | 16 | E/F 3.104 | | Swire Coca Cola | | | $ 399.50 | $ 399.50 |
| 2020.04.27 | 17 | E/F 3.104 | | Swire Coca Cola | | | $ 143.20 | $ 143.20 |
| 2020.05.07 | 18 | E/F 3.24 | | Qwest dba CenturyLink | | | $ 3,376.57 | $ 3,376.57 |
| 2020.05.07 | 19 | E/F 3.24 | | CenturyLink | | | $ 20,308.52 | $ 20,308.52 |
| 2020.05.11 | 20 | E/F 3.90 | | O'Reilly's | | | $ 1,775.62 | $ 1,775.62 |
| 2020.05.11 | 21 | E/F 3.114, E/F 3.115, E/F 3.116 | | Valley Bank of Helena | | | $ 143,649.30 | $ 143,649.30 |
| 2020.05.11 | 22 | D.2.13 | | NMAC | $ 4,300,000.00 | | $ 2,045,836.86 | $ 6,345,836.86 |
| Petition | | E/F 3.1 | | Advanced Auto Parts | | | $ 1,729.06 | $ 1,729.06 |
| Petition | | E/F 3.2 | | All Florida Towing | | | $ 657.25 | $ 657.25 |
| Petition | | E/F 3.3 | | Alldata Automotive Intell | | | $ 459.98 | $ 459.98 |
| Petition | | E/F 3.5 | | American Tire Dist | | | $ 1,406.26 | $ 1,406.26 |
| Petition | | E/F 3.6 | | AmeriPride | | | $ 6,378.21 | $ 6,378.21 |
| 2020.04.01 | | E/F 3.1 | | AmTrust North America | | | $1,720.00 | $ 1,720.00 |
| Petition | | E/F 3.8 | | Andreanna Garzia | | | $ 3,931.20 | $ 3,931.20 |
| 2020.04.01 | | E/F 3.2 | | Angela Allen | | | $71,000.00 | $ 71,000.00 |
| Petition | | E/F 3.10 | | AutoZone | | | $ 1,730.79 | $ 1,730.79 |
| Petition | | E/F 3.12 | | Bank of America N.A. | | | $ 1,156.13 | $ 1,156.13 |
| Petition | | E/F 3.13 | | Barr Credit Services | | | $ 737.04 | $ 737.04 |
| Petition | | E/F 3.14 | | Battery Systems | | | $ 227.57 | $ 227.57 |
| Petition | | E/F 3.15 | | Beaverton Infiniti | | | $ 192.97 | $ 192.97 |
| Petition | | E/F 3.16 | | BFS Capital | | | $ 134,057.00 | $ 134,057.00 |
| Petition | | E/F 3.17 | | Biehl & Biehl | | | $ 490.25 | $ 490.25 |
| Petition | | E/F 3.18 | | Blaize, Inc. | | | $ 227.08 | $ 227.08 |
| Petition | | E/F 3.19 | | Caine & Weiner | | | $ 22,750.62 | $ 22,750.62 |
| Petition | | E/F 3.20 | | Capital One | | | $ 646.69 | $ 646.69 |
| Petition | | E/F 3.21 | | Card Service Center | | | $ 3,025.43 | $ 3,025.43 |
| Petition | | E/F 3.22 | | Carquest Auto | | | $ 1,761.83 | $ 1,761.83 |
| Petition | | E/F 3.23 | | Cenex Fleet Fueling | | | $ 6,878.00 | $ 6,878.00 |
| Petition | | E/F 3.25 | | Chemwest | | | $ 309.98 | $ 309.98 |
| Petition | | E/F 3.26 | | CHS, Inc. | | | $ 6,588.59 | $ 6,588.59 |
| Petition | | E/F 3.27 | | Citi Bank | | | $ 42,901.53 | $ 42,901.53 |
| Petition | | E/F 3.28 | | Corelogic Credco LLC | | | $ 315.65 | $ 315.65 |
| Petition | | E/F 3.29 | | Corporate Fleet Express | | | $ 2,700.00 | $ 2,700.00 |
| Petition | | E/F 3.30 | | Cottonwood Motors, Inc. | | | $ 465.00 | $ 465.00 |
| 2020.04.01 | | E/F 3.3 | | CPI Collection Prof. Inc. | | | $583.38 | $ 583.38 |
| Petition | | E/F 3.31 | | Cuna Mutual Group | | | $ 562.55 | $ 562.55 |
| Petition | | E/F 2.1 | | Dani McDonald | | $ 10,000.00 | | $ 10,000.00 |
| Petition | | E/F 3.32 | | Dash Designs | | | $ 117.73 | $ 117.73 |
| Petition | | E/F 3.33 | | Dealer-FX Grou Inc. | | | $ 12,570.00 | $ 12,570.00 |
| Petition | | E/F 3.34 | | Dealersocket | | | $ 3,312.00 | $ 3,312.00 |
| Petition | | E/F 3.35 | | Dealertrack | | | $ 6,236.25 | $ 6,236.25 |
| Petition | | E/F 3.36 | | Demarios, Inc. | | | $ 41.99 | $ 41.99 |
| Petition | | E/F 3.38 | | Divine Film Solutions | | | $ 55.00 | $ 55.00 |
| Petition | | E/F 3.39 | | Eastern Commercial Credit | | | $ 805.51 | $ 805.51 |
| 2020.04.01 | | E/F 3.4 | | Emerald Services, Inc. | | | $224.40 | $ 224.40 |
| Petition | | E/F 3.40 | | Enterprise Holdings | | | $ 1,834.80 | $ 1,834.80 |
| Petition | | E/F 3.41 | | FedEx | | | $ 2,408.45 | $ 2,408.45 |
| Petition | | E/F 3.42 | | Fifth Third Bank | | | $ - | $ - |
| Petition | | E/F 3.43 | | First American Payment Sys. | | | $ 722.90 | $ 722.90 |
| Petition | | E/F 3.44 | | First Bankcard | | | $ 19,787.96 | $ 19,787.96 |
| Petition | | E/F 3.45 | | First Bankcard | | | $ 9,782.21 | $ 9,782.21 |
| Petition | | E/F 3.46 | | First Data Global Leasing | | | $ 2,070.88 | $ 2,070.88 |
| Petition | | E/F 3.47 | | Fisher's Technology | | | $ 132.00 | $ 132.00 |
| Petition | | E/F 3.48 | | Fitech | | | Unknown | $ - |
| Petition | | E/F 3.49 | | Flagship | | | $ 735.20 | $ 735.20 |
| Petition | | E/F 3.50 | | Flying M Machine & Fab. | | | $ 368.82 | $ 368.82 |
| Petition | | E/F 3.51 | | GB Collects, LLC | | | $ 1,934.20 | $ 1,934.20 |
| Petition | | E/F 3.52 | | General Distributing Co. | | | $ 123.00 | $ 123.00 |
| Petition | | E/F 3.53 | | Golden West Enterprises | | | $ 90.50 | $ 90.50 |
| Petition | | E/F 3.54 | | Green Meadow Auto Salvage | | | $ 480.00 | $ 480.00 |
| Petition | | E/F 3.55 | | Hansen Janitorial | | | $ 52.11 | $ 52.11 |
| Petition | | E/F 3.56 | | Helena Towing Service | | | $ 867.53 | $ 867.53 |

DISCLOSURE STATEMENT
ROBERT ALLEN AUTO GROUP, INC.
December 31, 2020

# APPENDIX "D"
*(Debtor's List of Claimants)*

**Robert Allen Auto Group List of Claimants**

*(as filed, before objections and/or settlements; claimants paid post-petition pursuant to Court authorization are excluded from this list)*

| Date | POC# | Sched | Class | Creditor | Secured | Priority | Unsecured | Total |
|------|------|-------|-------|----------|---------|----------|-----------|-------|
| Petition | | E/F 3.57 | | Idaho Dept. of Transportation | | | $ 7,000.00 | $ 7,000.00 |
| Petition | | E/F 3.58 | | Ireland Bank | | | $ 2,826.80 | $ 2,826.80 |
| 2020.06.23 | | E/F 3.1 | | IT&M Division, Inc. | | | $ 275.00 | $ 275.00 |
| Petition | | E/F 3.60 | | Jackson Murdo & Grant PC (2020) | | | $ 652.50 | $ 652.50 |
| Petition | | E/F 3.61 | | Jaguar Land Rover | | | $ 285.18 | $ 285.18 |
| Petition | | E/F 3.62 | | Jason's Auto Glass | | | $ 240.00 | $ 240.00 |
| Petition | | E/F 3.63 | | Jonathan Neil & Assoc., Inc. | | | $ 5,667.27 | $ 5,667.27 |
| Petition | | E/F 3.64 | | Ken Garff Jaguar | | | $ 285.18 | $ 285.18 |
| Petition | | E/F 3.65 | | Ken Garff MB | | | $ 503.20 | $ 503.20 |
| Petition | | E/F 3.66 | | Ken Garff Nissan | | | $ 1,821.76 | $ 1,821.76 |
| Petition | | E/F 3.67 | | Ken Garff VW | | | $ 47.70 | $ 47.70 |
| Petition | | E/F 2.4 | | Kenneth Edick | $ 10,000.00 | | | $ 10,000.00 |
| Petition | | E/F 3.68 | | Kingdom Keys | | | $ 195.00 | $ 195.00 |
| 2020.04.30 | | E/F 3.1 | | KXLF #1036 | | | $8,300.00 | $ 8,300.00 |
| Petition | | E/F 3.69 | | Lamar of Billings, MT | | | $ 3,250.00 | $ 3,250.00 |
| Petition | | E/F 3.70 | | Larry Miller Chevrolet | | | $ 259.59 | $ 259.59 |
| Petition | | E/F 3.71 | | Larry Miller Luxury | | | $ 90.84 | $ 90.84 |
| Petition | | E/F 3.72 | | Lawson Products | | | $ 254.29 | $ 254.29 |
| Petition | | E/F 3.73 | | Lithia Motors | | | $ 141.54 | $ 141.54 |
| Petition | | E/F 3.74 | | LKQ of Eastern Idaho | | | $ 2,052.37 | $ 2,052.37 |
| Petition | | Admin | | Maynes Taggart, PLLC | | $ 11,703.00 | | $ 11,703.00 |
| Petition | | E/F 3.75 | | Mercedes Benz Draper | | | $ 350.28 | $ 350.28 |
| Petition | | E/F 3.76 | | Mercedes of Farmington | | | $ 2,505.62 | $ 2,505.62 |
| Petition | | E/F 3.77 | | Mitchell 1 | | | $ 179.00 | $ 179.00 |
| Petition | | E/F 3.78 | | Mitsubishi Motors North America | | | $ 30,000.00 | $ 30,000.00 |
| Petition | | E/F 3.79 | | Moncor Distribution | | | $ 30.10 | $ 30.10 |
| Petition | | E/F 3.80 | | MTADA | | | $ 567.00 | $ 567.00 |
| Petition | | E/F 3.83 | | New Day Products | | | $ 184.23 | $ 184.23 |
| Petition | | E/F 3.84 | | New Start Financial | | | $ - | $ - |
| Petition | | E/F 3.87 | | North Shore Agency | | | $ 2,168.63 | $ 2,168.63 |
| Petition | | E/F 3.88 | | Northwestern Energy | | | $ 7,920.41 | $ 7,920.41 |
| Petition | | E/F 3.89 | | Novus Glass | | | $ 485.00 | $ 485.00 |
| 2020.04.01 | | E/F 3.8 | | PacificSource Health Plans | | | $492.31 | $ 492.31 |
| Petition | | E/F 3.92 | | Performance Outdoor | | | $ 800.00 | $ 800.00 |
| 2020.10.23 | | E/F 3.1 | | PGW Auto Glass | | | $62.48 | $ 62.48 |
| Petition | | E/F 3.93 | | Pitney Bowes Purchase Power | | | $ 402.95 | $ 402.95 |
| Petition | | E/F 3.94 | | Porter's Office | | | $ 10.38 | $ 10.38 |
| 2020.06.23 | | E/F 3.2 | | Premier Forty Financial, LLC | | | $459.62 | $ 459.62 |
| Petition | | E/F 3.95 | | Quality Foods Distributing | | | $ 347.76 | $ 347.76 |
| Petition | | E/F 3.97 | | Robert Allard | | | $ 24,069.97 | $ 24,069.97 |
| Petition | | E/F 3.98 | | Robert T. Allen | | | $ 391,765.04 | $ 391,765.04 |
| Petition | | E/F 3.100 | | Santander Consumer USA | | | $ 787.04 | $ 787.04 |
| Petition | | E/F 3.101 | | Scripps Center | | | $ 8,300.00 | $ 8,300.00 |
| Petition | | E/F 3.102 | | Sparklight | | | $ 341.94 | $ 341.94 |
| 2020.04.30 | | E/F 3.2 | | State of Montana, Motor Vehicle Division | | | $341.45 | $ 341.45 |
| Petition | | E/F 3.103 | | Sunrise Credit Services, Inc. | | | $ 149.50 | $ 149.50 |
| Petition | | E/F 2.5 | | Susan K. Edick | $ 13,650.00 | | $ 1,350.00 | $ 15,000.00 |
| Petition | | E/F 3.105 | | TD Auto Finance | | | Unknown | $ - |
| Petition | | E/F 3.106 | | Teton Honda | | | $ 184.43 | $ 184.43 |
| Petition | | E/F 3.107 | | Teton Hyundai | | | $ 23.83 | $ 23.83 |
| Petition | | E/F 3.108 | | The Car Medic | | | $ 115.00 | $ 115.00 |
| Petition | | E/F 3.109 | | The Smith Group Chevrolet | | | $ 54.74 | $ 54.74 |
| Petition | | E/F 3.111 | | Tire Depot | | | $ 280.50 | $ 280.50 |
| Petition | | E/F 3.112 | | Tri County Disposal | | | $ 558.82 | $ 558.82 |
| Petition | | E/F 2.6 | | Tyler Allen | $ 13,650.00 | | $ 2,350.00 | $ 16,000.00 |
| Petition | | E/F 3.117 | | Valley Office Systems | | | $ 8.87 | $ 8.87 |
| Petition | | E/F 3.118 | | Vengroff Williams | | | $ - | $ - |
| Petition | | E/F 3.119 | | Vin Solutions | | | $ 10,112.96 | $ 10,112.96 |
| Petition | | E/F 3.120 | | Whitehail's Alpine Distrib. | | | $ 1,884.20 | $ 1,884.20 |
| Petition | | E/F 3.121 | | XPO Logistics Freight, Inc. | | | $ 3,923.95 | $ 3,923.95 |
| | | | | | | | | |
| | | | | | | | | |
| **TOTAL** | | | | | $ 4,359,036.13 | $ 59,333.72 | $ 4,004,288.32 | $ 8,422,658.17 |

| | |
|---|---|
| DISCLOSURE STATEMENT<br>ROBERT ALLEN AUTO GROUP, INC.<br>December 31, 2020 | # APPENDIX "D"<br>*(Debtor's List of Claimants)* |

Monthly Operating Reports have been filed with the Court as required by the Chapter 11 Bankruptcy Code and the U.S. Trustee Guidelines and will not be attached here to avoid unnecessary duplication of paperwork.

# APPENDIX "E"
*(Monthly Operating Reports)*

**APPENDIX F**
**Liquidation Analysis**

| Asset Summary | Note | Book Value | Recovery % | | Proceeds | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| Cash | A | $ - | 100.0% | 100.0% | $ - | $ - |
| Accounts Receivable | B | $ 3,000.00 | 50.0% | 65.0% | $ 1,500.00 | $ 1,950.00 |
| Furniture | C | $ 3,445.00 | 80.0% | 85.0% | $ 2,756.00 | $ 2,928.25 |
| Equipment | D | $ 3,789.00 | 70.0% | 85.0% | $ 2,652.30 | $ 3,220.65 |
| Machinery | E | $ 1,645.00 | 70.0% | 80.0% | $ 1,151.50 | $ 1,316.00 |
| Intangibles (NMAC Claim Setoff) | F | | Unknown | | | |
| Real Property | H | $ 4,300,000.00 | 80.0% | 85.0% | ############# | $ 3,655,000.00 |
| Gross Proceeds from Liquidation | I | $ 4,311,879.00 | | | ############# | $ 3,664,414.90 |

| NOTES | |
|---|---|
| A | Cash and Cash equivalents were the balances reflected on the date of filing, 3/2/2020 |
| B | Accounts Receivable are estimated at a low recovery, 66.66% to 75% due to the uncertaintity of collectibility |
| C | Recovery on Furniture is assumed between 80% to 85%, which contemplates auction fees |
| D | Recovery on Equipment is assumed between 70% to 85%, which contemplates auction and transfer fees |
| E | Machinery is comprised of a lift table, charger for PHEV, and soda machine cabinets and have an estimated recovery of 70% to 80% due to liquidation discount, auction fees and transport fees |
| F | Intangibles consist of the NMAC Setoff Claim and has a negative asset value for any purchaser except Debtor or NMAC |
| H | Recovery of real property is set at 80 and 85% as a result of listing and closing fees and distressed sale |
| I | All exempt assets have been excluded from liquidation analysis as these items would not be available for liquidation |

CLAIMS SUMMARY

| | |
|---|---|
| Secured Claims | $4,359,036 |
| Priority Claims * | $60,541 |
| General Unsecured Claims | $4,089,286 |
| Total Claims | $8,508,863 |

* Estimate Only

DISCLOSURE STATEMENT
ROBERT ALLEN AUTO GROUP, INC.
December 31, 2020

APPENDIX "F"
*(Liquidation Analysis)*